IN THE DISTRICT COURT OF PAYNE COUNTY
STATE OF OKLAHOMA

IN THE DISTRICT COURT OF
Payne County, Oklahoma
Filed
SEP 15 2017
LORI ALLEN, Court Clerk
BY:_____
Deputy

JAMIE DOUGAN and TONYA DOUGAN )
husband and wife, )
)
Plaintiffs, )
)
v. ) CJ-2017- 412
)
THE TRAVELERS COMPANIES, INC., )
THE TRAVELERS INDEMNITY )
COMPANY and TRAVELERS HOME )
AND MARINE INSURANCE COMPANY, )
)
Defendants. )

## PETITION

COME NOW Jamie Dougan and Tonya Dougan, husband and wife ("Plaintiffs") and for their causes of action against Defendants The Travelers Companies, Inc., Travelers Indemnity Company and Travelers Home and Marine Insurance Company (hereinafter collectively referred to as "Defendants") allege and state as follows:

### Parties

1. At all relevant times herein mentioned Plaintiffs Jamie Dougan and Tonya Dougan, husband and wife, were and are residents of the County of Payne, State of Oklahoma.

2. Upon information and belief, Defendants are Minnesota Corporations licensed to sell insurance in the State of Oklahoma.

### Factual Allegations

3. Defendants issued and Plaintiffs faithfully paid the premiums on a homeowner's policy, Policy Number OTX995-983608531-633-1 ("Policy"), which they maintained on their home in the City of Perkins, Oklahoma. The Policy's term was effective and encompassed all relevant dates hereinafter mentioned.

4. On September 16, 2015, and within the effective dates of the Policy, which afforded coverage for specific perils including fire loss, the Plaintiffs home caught fire and suffered extensive damage thereto.

5. At the time of loss, Plaintiffs filed a claim of loss and Defendants acknowledged receipt of the claim by identifying both an event and a claim number of HXL6766 on or about September 16, 2015.

6. At the time of their loss Plaintiffs had coverage through Defendants that far exceeded the damages sustained by the fire.

7. Shortly after acknowledging the Notice of Claim, and assigning a claims adjuster, Defendants retained the services of Citadel Restoration ("Citadel") to begin remediation efforts on the home.

8. Citadel arrived at the home the same evening as the fire and set up dehumidifiers and fans.

9. Plaintiffs never spoke to Citadel before their arrival at the home.

10. Ryan of Citadel, echoed the statements of the claims adjuster that the Plaintiff's home would be thoroughly and completely cleaned and rid of any smoke damage or other contaminants.

11. At the outset there were holdups with remediation services because of Defendants' refusal to release funds.

12. The Plaintiffs were made to wait nearly a month before remediation services could be continued.

13. When Defendants finally did issue a contents proceeds check, it sent the money directly to Citadel.

14. Citadel brought in four cleaning ladies who wiped down very limited items in the house and not with the chemicals standard in the industry to eliminate mold, soot and smoke.

15. Citadel did not even touch the room where the fire originated and none of Plaintiff's furniture was removed.

16. Soon after Citadel claimed it had completed its services, it was clear it had done nothing by way of restoring the home to its pre-fire condition, despite repeated promises by Defendants for same.

17. Plaintiffs insisted that Defendants send out an inspector to review the remediation to their home, because they were getting push back from Defendants and Defendants were unwilling to work in good faith with its insureds.

18. Defendants agreed to have an inspector come out. The inspector came out in November, some 2 months after the fire occurred, and failed to even inspect the entire house. The inspector concluded the home had been remediated appropriately, but made Citadel come out to wipe down the appliances.

19. At the inspection, Plaintiffs had an appliance person present who advised the inspector the appliances could not be cleaned adequately to preserve them and that they posed a health hazard.

20. Defendants refused to replace the appliances at that time, despite the obvious need for same.

21. Plaintiffs began their own remediation efforts because of Defendants' failure to have the home remediated appropriately.

22. Plaintiffs could not live in the home, because of its condition and were required to live in a hotel and eat out for an extended period of time.

23      Plaintiffs went back and forth with Defendants trying to get the relief to which they were entitled.

24.     Finally, on or about mid-December 2015, Defendants sent out another inspector. Defendants still refused to pay for the appliances at that time, and in fact, refused to pay for any more hotel stays after the end of December.

25.     After about a month went by with no action from Defendants, Plaintiffs Jamie Dougan contacted the claims adjuster and threated to contact the Oklahoma State Department of Human Services, because of the deplorable living conditions of their home.

26.     At that time, Defendants grudgingly agreed to replace the appliances but still refused to compensate the Dougans for their out of pocket expenses, despite the fact the home was still unlivable. Every bit of relief the Dougans received from Defendants was a fight and not what they bargained for when purchasing the Policy.

27.     Plaintiffs had to move back into the home prematurely, because they could no longer afford the hotel stay, even though they had no usable appliances.

28.     The inspection of the home was half-hearted at best and the estimates for the repairs were far short of reality. They in no way accounted for the real world damages Plaintiffs sustained.

29.     Defendants have maintained Plaintiffs are not entitled to any other recovery from it.

30.     Plaintiffs have repeatedly asked to be reimbursed for their losses and thus far have not received any additional compensation.

31. Plaintiffs hired counsel to request additional relief and their chosen counsel has been sending and receiving letters to Defendants concerning additional compensation for Plaintiffs.

32. As of the date of this filing, Defendants have not agreed to provide any more relief to Plaintiffs, despite demand for same.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

33. Plaintiffs incorporate by reference herein Paragraphs 1 through 32 as though set forth in full herein.

34. At all relevant times herein mentioned, Plaintiffs were an insured under Defendants' Policy and were entitled to benefits under said Policy of insurance.

35. All conditions precedent to coverage under the Policy have been met.

36. Plaintiffs timely submitted their claim for benefits under the Policy and properly placed Defendants on notice of same.

37. Defendants breached their obligation to Plaintiffs under the terms and conditions of the Policy by: wrongfully refusing and failing to pay Plaintiffs the benefits to which they are entitled under the Policy; delaying remediation efforts, half-heartedly conducting inspections, refusing to fully remediate the home and by unreasonably delaying what payments Plaintiffs did receive; and by forcing Citadel onto them.

38. Plaintiffs have sustained damages as a direct result of Defendants' breach of their obligation to Plaintiffs under the terms of the Policy in excess of Seventy-Five Thousand Dollars ($75,000).

WHEREFORE Plaintiffs Jamie Dougan and Tonya Dougan, husband and wife, pray for judgment against Defendants as follows:

(a) For its actual damages in an amount in excess of $75,000.00 and as determined by the jury at the time of trial;

(b) For interest as provided by law;

(c) For their costs;

(d) For a reasonable attorney fee; and

(e) For such other and further relief as this Court deems just and proper under law or at equity.

## SECOND CAUSE OF ACTION
## BAD FAITH BREACH OF CONTRACT/
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

39. Plaintiffs incorporate herein by reference Paragraphs 1 through 38 as though set forth in full herein.

40. Defendants advertise for business and markets and solicits insurance business in the State of Oklahoma.

41. At the time of the events described herein, Plaintiffs were insureds under a Policy of insurance provided by Defendants and were otherwise entitled to benefits under said Policy and all conditions precedent to coverage under the Policy were met.

42. Plaintiffs timely submitted their claims for benefits under the Policy.

43. Defendants wrongfully denied payment to Plaintiffs of benefits under the Policy.

44. In their handling of Plaintiffs' claims, and as a matter of routine business practice in handling like claims under these policies, Defendants breached their duty to deal fairly and act in good faith, implicit covenants in every contract in the State of Oklahoma, toward Plaintiffs by:

a. Failing and refusing payment and other benefits under the Policy;

b.  Failing to properly investigate Plaintiffs' claims and to obtain additional information concerning same;

c.  Unreasonably withholding payment of the benefits, despite knowing said claims were valid;

d.  Refusing to honor Plaintiffs claims in the above-references instances for reasons contrary to the express provision of the Policy and/or Oklahoma law;

e.  Refusing to honor Plaintiffs claims by applying restrictions not otherwise spelled out in the Policy.

f.  Refusing to honor Plaintiffs claims by knowingly misapplying the Policy;

g.  Failing to adopt and implement reasonable standards for prompt investigation and reasonable handling of claims arising under the Policy;

h.  Not attempting, in good faith, to effectuate a prompt, fair and equitable settlement of Plaintiffs' claims, once liability had been established.

i.  Failing to properly evaluate any investigation that was performed;

j.  Failing and refusing to pay benefits under the Policy without any legal or factual justification;

k.  Failing to provide sufficient funds to effectuate repairs and compensate Plaintiffs for their out of pocket expenses;

l.  Disregarding Plaintiffs' reasonable claims the appliances needed to be replaced.

m.  Actively searching for reasons to minimize and deny certain aspects o the claim rather than pay same, pursuant to the Policy.

48. As a direct and proximate result of Defendants actions, Plaintiffs have suffered the loss and benefits under the Policy, financial hardship, attorneys' fees, loss of home and other monetary damages in excess of Seventy-Five Thousand Dollars ($75,000.00).

49. By engaging in the conduct described above, Defendants have acted intentionally and with malice towards others or has been guilty of reckless disregard for the rights of others entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiffs Jamie Dougan and Tonya Dougan, husband and wife, pray for judgment against Defendants as follows:

(a) For its actual damages in an amount in excess of $75,000.00 and as determined by the jury at the time of trial;

(b) For punitive damages in an amount as determined by a jury at the time of trial;

(c) For interest as provided by law;

(d) For their costs;

(e) For a reasonable attorney fee; and

(f) For such other and further relief as this Court deems just and proper under law or at equity.

Dated this 15th day of September 2017.

Respectfully submitted,

_____
Micah D. Sexton, OBA #13774
Scott K. Thomas, OBA #21842
Houston, Osborn, Sexton & Thomas, PLLC
P.O. Box 1118
Stillwater, OK 74076
(405) 377-7618 (voice)
(405) 377-8234 (facsimile)
*Attorneys for Plaintiff*

*Attorneys' Lien Claimed*
*Jury Trial Demanded*